# McGehee *v*. Western Union Tel. Co.

*Damage for Delay in Delivery of Telegram.*

(Decided Feb. 26, 1910. Rehearing granted June 30, 1910.
53 South. 205.)

1. *Telegraphs and Telephones; Delay in Delivery; Action by Addressee; Contracts.*—Unless he was a party to the contract, directly or through an agent, or unless the contract was made for his sole benefit, the addressee of a telegram cannot sue ex contractu for a breach of the contract to transmit; his remedy otherwise being in tort for the breach of the company's public duty.

2. *Same; Stipulation; Effect.*—In the absence of fraud, a stipulation on a telegraph blank which exempts the company from liability for damages on the failure to present written claim for the same within sixty days after the filing of the message. is binding both upon the sender and the addressee and no duty to give the sendee notice of the stipulation, rests upon the company.

3. *Same; Rules; Reasonableness.*—A rule of a telegraph company requiring claims for damages respecting the transmission of messages to be presented in writing within sixty days from the filing of the message, is not invalid as limiting liability for its negligence.

4. *Same; Effect on Addressee; Plea.*—Where a sendee contracts without reference to or notice of a rule the addressee is not affected thereby, but if the sender contracts with reference to or with notice of the rule or regulation or that it is a rule or regulation in force in the general conduct of the company's business so as to incorporate it in the contract of sending by implication, the sendee is concluded in accordance therewith; but the mere allegation in a plea, setting up the rule as a defense, that the rule or regulation was printed on the message delivered to the sendee, was an insufficient allegation that said rule or regulation was a part of the contract of sending.

5. *Plea; Demurrer; Sufficiency.*—Section 5340, Code 1907, specifies that objections taken on demurrer to pleading must be specific as to objection, and hence, a demurrer to·a plea as being no answer to the complaint, as being sufficient in law, and as failing to allege that plaintiff knew of a rule relied on by defendant, was too general.

6. *Same; Replication; Departure.*—Where the complaint alleged a delay in the delivery of a telegram, and a plea thereto set up a rule of the company and alleged that it was printed on the blanks on which the message was delivered, a replication thereto alleging that the blank on which the message was written did not contain a rule relied on by the company, was not a departure from the complaint, and hence, not subject to demurrer as for same.

7. *Same; Demurrer; Sufficiency.*—A demurrer to a replication that it did not deny the rule counted on in the plea was too general under section 5340, Code 1907.

8. *Same; Plea; Waiver of Insufficiency.*—By a failure to demur on that ground objection to insufficiency of the plea is waived.

9. *Same; Replication; Sufficiency.*—Where the suit was against a telegraph company for failure to deliver a message and the plea, which counted on the rule of the company, failed to show that the rule was part of the contract, a replication setting up that the rule was not a part of the contract set up matter in confession and avoidance of the plea, and not a matter of law only which should have been raised by demurrer.

10. *Telegraphs and Telephones; Delay in Delivery; Pleading; Burden of Proof.*—Where the action was against a telegraph company for delay in delivering a telegram, and the plea thereto set up a rule of the company, but did not aver that the rule was a part of the contract, and the plaintiff replied that the rule was not a part of the contract, the plaintiff thereby assumed the burden of showing that negative fact.

11. *Appeal and Error; Harmless Error; Pleading.*—Where a pleading is incapable of amendment so as to make it good without constituting a departure in pleading, any error in sustaining a general demurrer thereto is harmless.

12. *Same.*—Where the suit was against a telegraph company for delay in delivery of a telegram, and the company relied in defense

[McGehee v. Western Union Tel. Co.]

on a rule governing transmission, it was error to sustain a general demurrer to a replication which was capable of amendment respecting a denial of notice of such rule to the sender.

(Mayfield, J., disents in part.)

APPEAL from Butler Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by Jacob A. McGehee against the Western Union Telegraph Company for non-delivery of a telegram. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The following are the pleas mentioned in the opinion:

"(2) Defendant says that at the time the alleged message mentioned and set out in the complaint was filed with the defendant for transmission, and for a long time prior thereto, defendant had in force a rule or regulation, which was printed on all of the blanks on which messages handled by the defendant were written, as follows: 'The company will not be liable for damages or statutory penalty in any case where the claim has not been presented in writing within 60 days after the message is filed with the company for transmission.' And defendant avers that said rule or regulation is and was a reasonable one. Defendant avers that the plaintiff failed to comply with said rule or regulation, and did not present in writing within 60 days after the alleged message was filed with the company for transmission any claim for the alleged damages set forth in the complaint.

"(3) For further plea this defendant says that at the time the message set forth and described in the complaint was filed with the defendant company for transmission and delivery, and for a long time prior thereto, defendant had in force a rule or regulation that 'the company would not be liable for damages in any case where the claim is not presented in writing within 60

days after the message was filed with the company for transmission,' which said rule or regulation was a reasonable one, and that said rule or regulation was printed in plain language upon the blank upon which the message, alleged to have been delivered to defendant, was delivered, and that, notwithstanding such rule or regulation, the plaintiff did not present to the company in writing within 60 days after the message was filed with the company for transmission any claim for damages alleged to have been suffered by him."

The following demurrers were interposed to these pleas: "(1) No answer to the complaint. (2) The action was ex delicto, and the pleas seek to set up a contract between plaintiff and defendant to excuse defendant of its negligence and wrong complained of. (3) Pleas are insufficient in law. (4) They fail to allege or set out any fact which would excuse defendant of its own wrong and negligence. (5) The law does not require a party injured by the negligence and wrong of another to file any claim for damages within 60 days after the wrong and negligence claimed occurred, and the party committing such wrong and negligence cannot adopt rules and regulations excusing such wrong and negligence. (6) Seeks to set up rules and regulations of defendant to excuse itself of its own wrong and negligence committed in violation of law. (7) Seeks to excuse itself of a violation of a duty imposed upon it by law by rules and regulations governing its own affairs. (8) Seeks to excuse itself as to a violation of a duty imposed upon it by law by showing rules and regulations adopted by it, but fails to allege that the plaintiff agreed to abide by said rules and regulations. (9) It fails to allege that plaintiff was a party to such rules and regulations. (10) Fails to allege that plaintiff knew or was informed of said rules and regulations."

[McGehee v. Western Union Tel. Co.]

The following replications were filed:

(2) "For answer to plea 2, by way of replication thereto, plaintiff says that printed on the telegram or message which was delivered to the defendant to be transmitted and delivered to the plaintiff was the following regulation: 'This company transmits and delivers messages alone on conditions limiting its liability which have been assented to by the sender of the following message. Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission for delivery of unrepeated messages, beyond the amount of toll paid thereon, nor in any case where the same is not presented in writing within 60 days after the message is filed with the company for transmission.' Plaintiff avers that he was not a party to said agreement, and did not agree to any such rule or regulation, and was not informed that he should file any claim for damages within 60 days from the filing of said message."

3. "Answering plea 3, plaintiff says by way of replication that the rules and regulations set out in said plea as printed on the message delivered to this plaintiff required the sender to file such a claim within 60 days from the filing of the message, and did not require this plaintiff to file such claim; said regulation being as follows: (Here follows the identical regulation set out in replication 2.) And plaintiff was not a party to such agreement, and had no notice nor was he informed that he was required to file this claim."

(A) "By way of replication to plea 3, plaintiff says that at the time that said message was delivered to the defendant at Samson, Ala., that the blank upon which said message was written did not contain the rule or regulation of defendant, either printed or written there-

on, 'that the company would not be liable for damages in any case when the claim is not presented in writing within 60 days after the message was filed with the company,' and in accepting said message for transmission and delivery no such rule or regulation is a part of its contract to transmit and deliver said telegram, and no duty rested on this plaintiff to file his claim for damages within 60 days from the date said message was filed with the defendant for transmission."

Demurrers were filed as follows: "To replication 2: Because said replication was nothing more than a taking issue on the plea. It does not traverse, or confess and avoid, the plea. Admits that the stipulation or regulation requiring claim to be presented within 60 days was a part and parcel of the agreement under which defendant undertook to transmit and deliver. (4) Because plaintiff was bound by the condition under which defendant undertook the transmission and delivery of the message, whether he assented to same or not. Because the replication purports to answer the entire plea, but answers only a part thereof. To replication 3: Same as 2, with the additional ground that the statement that plaintiff was not required to file such claim within 60 days is a conclusion of the pleader, and because the replication shows on its face that the stipulation was printed on the message when delivered to him, and plaintiff cannot now say that he had no notice thereof. To replication A: Because it was a departure from the complaint. It does not traverse, or confess and avoid, the plea, and does not deny the rule or regulation set out in the plea, or that the message, when delivered to plaintiff, was on a blank on which said rules or regulations were printed."

POWELL, HAMILTON & LANE, for appellant. The complaint contained a good cause of action.—*W. U. T. Co.*

[McGehee v. Western Union Tel. Co.]

v. *Krichbaum,* 132 Ala. 535; *Same v. Waters,* 139 Ala. 656; 21 Enc. P. & P. 508 and note 2; 25 A. & E. Enc. of Law, 826 and note 3; *Shingleur v. W. U. T. Co.,* 18 South. 424. The demurrers to special pleas 2 and 3 should have been sustained.—*Webb v. W. U. T. Co.,* 169 Ill. 610; *W. U. T. Co. v. DuBois,* 121 Ill. 248; *W. U. T. Co. v. McKibben,* 114 Ind. 511. The court erred in sustaining demurrers to the special replication.— *Harris v. W. U. T. Co.,* 131 Ala. 519. The filing of the suit was the equivalent of a presentation.—65 Ala. 193; 74 Ala. 150; 82 Ala. 340; 89 Ala. 510. As to the replications see also.—*W. U. T. Co. v. Hinkle,* 3 Tex. 518.

GEORGE H. FEARONS, RAY RUSHTON, and WILLIAM M. WILLIAMS, for appellee. A sendee when not a party to the contract is bound by the reasonable rules and regulations of the company of which he has actual knowledge, or where he is presumed to have knowledge when he seeks damages for the breach of a public duty in failing to deliver a telegram.—6 Cyc. 546; 99 Mo. App. 1; 98 Ky. 152; 88 Ga. 563; 46 N. H. 213; 27 A. & E. Enc. of Law, 1047. On these authorities it must be held that the rule set up in this case is reasonable. A person dealing with a public service corporation must abide by its reasonable rules and regulations.— *W. U. T. Co. v. Prevatt,* 149 Ala. 617; *Same v. Henderson,* 89 Ala. 510; 86 Tex. 368; 103 Ind. 505; 107 Ky. 464; 53 S. W. 742; 1 L. R. A. (N. S.). The contract out of which the sendee's right of action arises was not made till the message was delivered to him with the sixty day limit stipulated thereon, which at that time became binding upon him.—*W. U. T. Co. v. Prevatt, supra; Same v. Harris,* 121 Ala. 619.

McCLELLAN, J.—The action is tort, by the sendee of a telegraphic message. The negligence averred was

·delay in delivery—nondelivery within a reasonable time and as in duty bound to do. The defendant (appellee) set up, in bar of the recovery sought, the following rule or stipulation: "The company will not be liable for damages or statutory penalties in any case where the claim has not been presented in writing within 60 days after the message is filed, with the company for transmission"—it being averred that the claim counted on was not filed as required by the rule or stipulation. The demurrers to these pleas took the point that the rule or stipulation was an element of the contract entered into by the sender for the transmission and delivery of the message and, no relation of agency being averred, as between sender and sendee, in the premises, that, in consequence, the obligations of the contract were not binding on the sendee, who was not a party thereto and did not, as an element of the contract, assent to the stipulation. The court overruled the demurrers, and the plaintiff, replying to the pleas, undertook to set up the facts, in substance; indicated by the ground of demurrer directed, as stated, against the pleas. To these replications demurrers were sustained. From a judgment for defendant, plaintiff appeals, assigning as errors only rulings on demurrers to pleas and replications.

In *Adair's Case,* 115 Ala. 441, 22 South. 73, it was held that the sendee could not maintain an action for breach of the contract in the transmission and delivery of a telegram unless he (sendee) was "directly or per alium a party to the contract." This doctrine was reaffirmed in *Ford's Case,* 117 Ala. 672, 23 South. 684. We take "per alium" to mean a relation of agency to which the sendee was the principal. However, it should be noted, as upon the authority of the *Ford Case,* that a sendee may also maintain an action on the contract

where the "motive for the formation" of the contract contemplates the benefit, solely, of the person to whom the message is addressed. This latter announcement has been recently reaffirmed in *Adam's Case,* 154 Ala. 657, 46 South. 228, among others of our decisions.

Unless the sendee is in one of the three classes mentioned in the *Adair* and *Ford Cases,* and later decisions following in their wake, the sendee cannot maintain an action ex contractu, because he is not a party or privy to the contract.—*Heathcoat's Case,* 156 Ala. 339, 47 South. 139; *Ford's Case,* 117 Ala. 672, 676, 23 South. 684; *Adams' Case,* 154 Ala. 657, 659, 46 South. 228, and authorities cited.

The sendee's remedy is in tort, for the breach of the public duty, independent of the promise of the contract.—*Krichbaum's Case,* 132 Ala. 535, 31 South. 607; *Waters' Case,* 139 Ala. 652, 36 South. 773. The former case again came before the court (145 Ala. 409, 41 South, 16), but the soundness of this ruling on the first appeal does not appear to have been questioned.

To what extent, if at all, is his remedy or rights affected by the reasonable rules of the company governing its business or by stipulations of the contract, between the company and the sender, to which he (sendee) is not a party, unless within the three classes defined in the *Adair* and *Ford Cases?*

This court has not dealt with the question. Counsel for appellant insist that *Harris' Case,* 121 Ala. 519, 25 South. 910, 77 Am. St. Rep. 70, is authority for his contention. That case upheld the reasonableness and validity of the rule or stipulation here pleaded, declaring it not a stipulation or rule in respect of negligence. It also held that the material averment, in plea 2, of a special contract was not supported by any evidence introduced. But this ruling is in no sense an affirmation

that a sendee of a message is unaffected in respect of right or remedy by rules or stipulations by which a sender is bound. This is conclusively shown by the fact that Harris, the plaintiff, was the sender, not the sendee, of the message. The question in hand was not presented nor decided in *Harris' Case.*

The numerous authorities cited pro and con have been considered with great care. As stated, this court is uncommitted on the matter, and is free to adopt that view appearing soundest in reason.

Upon first consideration, this argument would seem to be well-nigh conclusive in appellant's favor; that a sendee of the class here complaining, not a party to the contract, entitled to no right of action for the breach of its promise, should not be bound by its terms or provisions. This view is, in effect, that prevailing in *Webbe's Case,* 169 Ill. 610, 48 N. E. 670, 61 Am. St. Rep. 207, among others. That argument appears to have the virtue of fairness and to lead to a just conclusion. But more mature consideration compels the abandonment of it as of weight in the premises. The weakness of the argument lies in its superficialness. It omits necessary reckoning with the source and character of the duty owed by the company to the sendee and of the breach of which he complains. The source of the duty, giving rise to it, is, obviously, the contract, entered into alone by the sender and the company. From that contract must be gathered the person to whom transmission and delivery is undertaken to be effected. The contract establishes that fact, and upon it rests, in part and as of course, the sendee's right to recover for wrong suffered. The sender may order that contract after such fashion as he and the company agree upon. The company and the sender might bind the company to deliver the message beyond

the free delivery limits of the destination office, or they might agree to delivery outside of office hours. On the other hand, in the company's favor, the sender and the company may agree that the message be delivered after a certain hour, many hours beyond a reasonable time for its delivery, to one within easy access and within the free delivery limits of the destination office; or that the message, instead of delivery as, unless contracted against, would be the duty of the company, that it be committed to the mail for the sendee.

If the company failed to deliver beyond limits, or delivery was not effected because not within reasonable office hours, could the company defend on the ground that the party was beyond the limits of delivery, or that the message was received during, and delayed only until the expiration of, reasonable office hours. On the other hand, could the company be held liable for failure to deliver a message when its contract with the sender contemplated the holding of the message to a certain hour, or for the consequence of the loss of the message in the mail, where, in keeping with its contract with the sender, it had promptly mailed the message? Surely both questions, raised upon suppositions, must be answered in the negative, unless it can be maintained: First, that the duty is different to the sendee from that due the sender; second, that the law-imposed duty, upon which the sendee relies for his cause of action, ignores the contract upon which it rests and out of which it rises and denies to the company the right to qualify, with reasonable rules and stipulations, its obligations in respect of a telegram, and yet, at the same time, impose on the company the obligation to fulfill, to the sendee's advantage, conditions beyond its usual course of business. It is apparent that the law-imposed duty would be at least unjust and illogical if

such results obtained. If they did obtain, we would have totally different duties due sendee and sender. The former would be favored by his exemption from the effect of all stipulations, and the latter would be bound by them, notwithstanding the identical contract gave each duty life, and the company would be, in effect and for its own reasonable protection and the conduct of its business, denied the inherent power to stipulate in reasonable limitation of duty. Such cannot be the law, nor the law's effect.

The underlying reason is, and must be, that, in this class of cases, the duty, conferring the right of action ex delicto on one not a party to the contract, is necessarily colored and controlled by the contract out of which the duty arises. The duty, whether within the promise of the contract or imposed by law because of the public character and service of the company, must be the same, viz., that it will, with due diligence and skill, transmit and deliver the message as the sender and the company have stipulated. If they have not stipulated against certain contingencies, the company cannot raise them as a shield from the attack of a wronged sendee. If they, expressly or by implication, have so stipulated, and the sendee has suffered in consequence of a breach of the stipulation, his right to recompense therefor must be ascertained with reference to the stipulations. He cannot establish a relation to the company through appeal to a contract and then repudiate, if to his disadvantage, provisions of the contract. He must accept and be bound by the whole contract or none of it.

While there are decisions elsewhere to the contrary, the following citations, among others, support the soundness of our view in this connection: *Broom's Case,* 71 S. C. 506, 51 S. E. 259; *Culberson's Case,* 79

[McGehee v. Western Union Tel. Co.]

Tex. 65, 15 S. W. 219; *Mainer's Case,* 94 Tenn. 442, 29 S. W. 732; *Russell's Case,* 57 Kan. 230, 45 Pac. 598; *Frazier's Case,* 45 Or. 414, 78 Pac. 330, 67 L. R. A. 319; *Ellis' Case,* 13 Allen (Mass.) 226.

We see nothing in the stipulation here pleaded to exempt it from the considerations stated. It is, as said in *Way's Case,* 83 Ala. 542, 4 South. 844, a limitation in the nature of a condition subsequent. It bound the sender of the message in question, if within his contract as a stipulation therein, or if he engaged the service of the company with notice that the matter pleaded was a rule or regulation of the company in the general conduct of its business. If it was not a stipulation or was not such a rule or regulation, of which he (sender) had notice, then it did not bind the sender, nor of course the sendee. The contract being with the sender, and not with the sendee, the sendee cannot take anything by failure of notice to him of the stipulations of the contract or the rules and regulations with expressed or implied reference to which the contract was made. The company's duties were colored and controlled by the contract completely consummated between it and the sender at the time the message was accepted for transmission and delivery. So far as the pleas show, there was no assumption of obligation by the company to acquaint the sendee with the terms of the contract. We know of no rule of law that imposed it. The sendee's course was to inform himself what the contract was. He cannot assail the defense of a stipulation or rule or regulation, binding the sender, by an objection that he did not know, or have notice, of the rule or stipulation. To allow that would enlarge the contractual obligation of the company to the advantage of the one not a party to the contract.

The report of the appeal will contain pleas 2 and 3 as amended, the demurrers thereto, replications 2, 3, and A, and the demurrers directed thereagainst.

Plea 2 as amended alleged that the requirement for presentation of claims for damages, growing out of the service contracted for, was on the blank on which the message was written. Where that is the case, the sender, in the absence of fraud, is estopped to deny the binding effect of the requirement.—*W. U. Tel. Co. v. Prevatt,* 149 Ala. 617, 43 South. 106. Being so binding upon the sender, the sendee (plaintiff) is likewise bound. Accordingly, plea 2, as amended, was not subject to demurrer on any ground.

None of the grounds of demurrer to plea 3 as amended were well taken. The plea, in substance, asserts that, at the time the sender contracted for the transmission and delivery of the message in question, there was a rule or regulation then, and long before, in force, requiring the presentation of claims for damages to be made within 60 days after the filing of the message; that the rule was a reasonable one; that the rule or regulation was printed on the message delivered to the plaintiff (sendee); and that he did not present his claim within the required period. We summarize the grounds of demurrer interposed to this plea.

Those numbered 1, 3, and 10 were general and hence unavailing under our statute.—Code 1907, § 5340.

Those numbered 2, 4, 5, 6, and 7 proceed on the theory that the rule or regulation pleaded was directed against liability for the consequence of negligence or wrong; whereas, it is settled here that the rule or regulation "does not limit the defendant's liability for negligence as the demurrer to the plea assumes, but only requires reasonable notice to the defendant of claims for damages."—*Harris v. W. U. Tel. Co.,* 121 Ala. 519, 521, 25

South 910, 77 Am. St. Rep. 70; *W. U. Tel. Co. v. Henderson,* 89 Ala. 510, 515, 516, 7 South. 419, 18 Am. St. Rep. 148, among others.

Those grounds numbered 8 and 9 object, in substance, that the plaintiff (sendee) was not bound by the rule or regulation pleaded. These grounds express the theory of the case, in this regard, urged below and here for the appellant.

We have ruled, and so upon reason, as appears to us, of evident soundness, that the sendee, though suing in tort, is bound by the contract, as before stated, entered into by the sender and the company; that, if the sender was bound by the rule or regulation, the sendee is bound; and that to give notice of the terms and conditions of that contract to the sendee, who is not a party thereto, is not, unless of course expressly stipulated for in the contract, an obligation assumed by the company.

The allegation that the rule or regulation was printed on the message delivered to the plaintiff (sendee) was, in consequence, an averment without force or effect upon the rights of the parties litigant. If the sender contracted without reference to, or notice of, the rule or regulation, the sendee's rights was not affected thereby. If the sender contracted with reference to that rule or regulation, or with notice that it was a rule or regulation in force in the general conduct of the company's business, so as to incorporate it in the contract by implication, then the sendee was concluded in accordance therewith.—*Harris v. W. U. Tel. Co., supra;* 2 Joyce on El. § 708.

The plea (3 as amended) avers that the rule or regulation was, and had long been, in force when the message was filed for transmission and delivery by the sender. One imperfection lay in the fact that it does not ap-

pear from the plea that the rule or regulation was an element of the contract entered into by the sender and the company, either as the result of its being written or printed on the blank on which the message was written when delivered and accepted by the defendant at Samson, or by incorporation, by implication, in the contract in consequence of the sender's having notice that such rule or regulation was a general rule or regulation then, at the time the contract was made, in force in the conduct of defendant's business; or, stated summarily, that it does not appear from plea 3 as amended that the requirement pleaded bound the sender. As before announced, no ground of the demurrer, as readily appears, took the point, nor any other possessing merit as against this plea.

The argument pressed by the appellee, that the record does not show the amendment of original plea 3, contradicts the record. A comparison of the original, with the amended, plea 3, discloses that the word "plaintiff," as it appears in the amended plea 3, just preceding the words, "was written," was substituted for the word "defendant" there employed in the original plea 3.

Replications 2 and 3, which the judgment entry recites were filed to pleas 2 and 3 as amended, were, under the prevailing view of the law applicable, well stricken in response to ground 4 of the demurrers, if not others, to these replications.

Replication A to plea 3 as amended assumed to assert that the rule or regulation set out in plea 3 as amended was not a part of the contract made by the sender with the defendant. In this particular the plaintiff seems to have abandoned his theory up to that point steadily pressed, viz., that the sendee was not bound by the contract originally made by the sender with the de-

fendant. To this replication the defendant interposed a demurrer that was without merit in any of its four assignments. The two first grounds assert that the replication tokened a departure from the complaint. That was untenable when the plea to which it was addressed was remembered. The third ground was general, and, under the statute, could not rightfully prevail. The fourth ground asserted that the replication did not negative the plea's averment that the message delivered to plaintiff (sendee) bore the rule or regulation. Under the law of the case as before announced, this ground was without merit. It follows, necessarily, that the court erred in sustaining the demurrer to the replication.

Two questions now arise and must be considered. One is: Was the error without injury? The other is, stressed for appellee in brief: Did the replication voice, only, matter that should have been spoken by demurrer, and hence token an effort to substitute replication for demurrer, thereby undertaking to assert, in reply to an allegation (in the plea) of fact, a matter of law only.

It will be noted that plea 3 as amended contained no express averment that the rule or regulation was a part of the contract. The two means, before stated, or one of them, by which the rule or regulation may have been incorporated in the contract, are not specifically averred to have entered into the engagement between sender and the company. It will be further noted that had demurrer taken this point it must have been sustained, Accordingly, the plea left the matter, in respect of the indicated matter, in inference. The demurrant waived the objection to the plea by not taking the point. The replication asserted the fact, negatively, and thereby assumed the burden of its support in the proof, thus relieving the defendant of a burden that in

right should have been on it, that the rule or regulation was not written or printed on the original message accepted by the defendant, at Samson, and that the rule or regulation did not become a part of the contract between the sender and the company. In short, the plaintiff, passing without objection the indicated frailty of the plea, asserted in the replication the fact left to mere inference by the plea.

This statement of the scope and effect of the replication and of the plea, considered together, necessarily leads to the conclusion that the replication did not set up matter of law only. On the contrary, it obviously pleaded a fact, pure and simple, which, if sustained, avoided the effect of the rule or regulation asserted in the plea and the existence of which the replication confessed, but apparently limited the possibility of the rule or regulation's becoming a part of the contract to its incorporation therein by means of the indorsement on the blank when the message was originally filed at Samson, and excluding the possibility of its incorporation by means of the implication, based on notice to the sender, stated before. We therefore hold that the mentioned insistence for appellee cannot be approved. The replication set up matter of fact in confession and avoidance of the plea, not of law only.

The rule is that error is without prejudice where a general demurrer is sustained to a pleading, and that the pleading is incapable of amendment, without departure therefrom, so as to make it good.—*Ryall v. Allen,* 143 Ala. 222, 38 South. 851. This replication (A) was not within the rule, since it was capable of amendment in respect of a denial of notice to the sender of such rule or regulation, so as to avoid its implied incorporation into the contract, between sender and the company, as before ruled. It hence results that in

sustaining the demurrer to the replication (A) there was error, for which the judgment must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, SAYRE, and EVANS, JJ., concur.

MAYFIELD, J. (dissenting in part).—I cannot concur in the conclusion reached in this case that the stipulations on blank messages like the one in question in this case become binding on the sendee in all actions by him against the telegraph company for negligence in its failure to send or deliver a message, because the message was written on such blank and signed by the sender.

I concede that this court and many others have held such stipulations binding on the sender in actions for a breach of the alleged contract to transmit and deliver promptly messages written on such blanks on the theory sometimes that it was a part of the contract and sometimes on the theory that it was a reasonable rule which the telegraph company had a right to adopt, and that, sender writing his message on such blank containing the provision, he is presumed to have had knowledge or notice thereof and to have consented thereto, and was therefore bound by it. And the same courts have also held that such stipulations were binding on the sender in actions of tort against the telegraph company based on a breach of duty growing out of such contract. The same courts have also held that such stipulations are binding on the sendee when he sues for a breach of such contract containing such stipulations; that he cannot both claim under and against such contract; that if he claims under it he must be bound by all the provisions

or stipulations. The same courts have also held that such stipulations were not exemptions against the negligence of the companies, but were reasonable regulations as to the time in which such actions should be brought. It is upon this theory alone that they are upheld by any court. They are in their nature limitations of actions by contract or rules.

Such provisions have been held to be invalid as against sender or sendee by a great number of courts; some, upon the theory that they were attempts to exempt the companies from liability against their own negligence, while others placed the invalidity upon the ground that they were against public policy; some, that they were in violation of the Constitutions, in that they were attempts to vary the statutes of limitations; and others that they were unreasonable limitations of the common-law liability of carriers.

Many, if not all, of these conflicting cases are collected and cited in cases reported in the American State Reports, and the notes thereto. See the following reported cases and notes as there reported: *Western Union Tel. Co. v. Henderson* (Ala.) 18 Am. St. Rep. 148; *Hill v. Western Union Tel. Co.* (Ga.) 21 Am. St. Rep. 166; *Western Union Tel. Co. v. Dougherty* (Ark.) 26 Am. St. Rep. 33; *Pacific Tel. Co. v. Underwood* (Neb.) 40 Am. St. Rep. 490; *Kirby v. Western Union Tel. Co.* (S. D.) 46 Am. St. Rep. 765; *Mathis v. Western Union Tel. Co.* (Ga.) 47 Am. St. Rep. 167; *Western Union Tel. Co. v. Kemp* (Neb.) 48 Am. St. Rep. 723; *Western Union Tel. Co. v. Hines* (Ga.) 51 Am. St. Rep. 159; *Webbe v. Western Union Tel. Co.* (Ill.) 61 Am. St. Rep. 207; *Western Union Tel. Co. v. Eubanks* (Ky.) 66 Am. St. Rep. 361; *Harris v. Western Union Tel Co.* (Ala.) 77 Am. St. Rep. 70; *Davis v. Western Union Tel. Co.* (Ky.) 92 Am. St. Rep. 371; *Hartzog v. West-*

*ern Union Tel. Co.* (Miss.) 105 Am. St. Rep. 459; *Arkansas & L. Ry. Co. v. Stroude* (Ark.) 113 Am. St. Rep. 130.

All of the cases which uphold such stipulations do so upon the ground that they are reasonable stipulations and that the parties thereto have notice or knowledge of the stipulations. If a party has no knowledge or notice, actual or constructive, of such stipulations, of course he would not be bound thereby. All the authorities hold this. If a sendee has no actual or constructive notice that a message is delivered by the sender to the telegraph company, and it is never sent, or delivered until after the expiration of the 60 days, he surely ought not to be bound by such stipulations. If he is bound by such stipulations, then the telegraph company can always avoid liability by not sending the message at all, or waiting 60 days after the filing of the message with it. This I concede is an extreme case and one not certain to happen; but it points out the unsoundness of the rule announced in the majority opinion in this case. Even the statute of limitations does not begin to run against a party until he has actual or constructive notice, until he knows or ought to know of this right of action. Apply the statute to this case in hand, the statute of limitations of one year would not begin to run against the plaintiff until he knew or ought to have known of his right of action. Surely a stipulation of a telegraph blank ought not to be more binding or construed more strictly against a stranger to the contract than a statute. A statute of limitations would be unconstitutional and void if it did not afford litigants a reasonable time within which to bring their actions, after they know of, or ought by the exercise of reasonable diligence to know of, the existence of their right of action.

The rule of law announced in this case I think goes too far in upholding such stipulations in telegraph messages in actions of tort by the sendee. It will in effect deny to sendees any right of action for failure to send or deliver, unless they are fortunate enough to acquire knowledge of the message and the tort of the telegraph company by some other means than the telegraph company within 60 days from the time of the filing of the message with the company.

If the pleas were sufficient (which I do not concede), the replications were certainly complete answers thereto. If the replications are not good, it proves conclusively that the stipulation which the pleas set up is invalid. No stipulation of the kind could be valid, to which the replications would not be an answer.

## ON APPLICATION FOR REHEARING.

MAYFIELD, J.—The application for a rehearing in this case having been granted since the writing of the above, and the judgment of affirmance set aside and one of reversal rendered, I concur in the conclusion as to a reversal, and in the holding to the effect that the demurrer to the replication should have been overruled as stated in my dissenting opinion above. I am, however, of the opinion that the demurrer to plea 3 pointed out with certainty the defects of the plea, and that the demurrer to this plea should have been sustained.

I cannot agree to the proposition that a party who sues in tort is bound by a contract made between the defendant and a third party, unless he can or does rely upon that contract for a recovery. If he cannot and does not rely upon such contract for a recovery, he ought not to be bound by it. The plaintiff in this action did not sue upon any contract; he could not have

[Western Union Tel. Co. v. Cleveland.]

sued upon the one set up in any one of the pleas, and he ought not to be bound by it.

This action is for a breach of duty which the defendant owed to the public as well as to the plaintiff—a duty imposed by law as well as by contract, and a duty which would have existed, and would have been breached, if the facts in this complaint alleged were true, whether there was any contract or not between the sender and the telegraph company, and would exist, and was breached, in spite of any contract they did make or could have made in the premises.

